UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00132-GNS-LLK

HELEN FEATHERSTON                                                                      PLAINTIFF

v.

U.S. DEPARTMENT OF LABOR                                                              DEFENDANT

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Plaintiff, Helen Featherston's ("Featherston"), challenge of the Department of Labor's ("DOL") denial of her claims for survivor benefits under Parts B and E of the Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA" or "Act"), 42 U.S.C. §§ 7384 to 7385s-16.  Because the only decision for which review is available is not arbitrary or capricious, Featherston's claim is **DENIED.**

### I.      STATEMENT OF FACTS AND CLAIMS

Featherston's husband, Charles Featherston, worked at the Paducah Gaseous Diffusion Plant ("PGDP") from 1952 to 1983.  (Administrative R. 325, DN 23 [hereinafter AR]). Featherston alleges that her husband was exposed to hazardous substances during his time at the PGDP, which caused various illnesses, including chronic beryllium disease ("CBD").  (*See* Compl. ¶ 10; Defs.' Br. 7, DN 28).  Featherston's husband passed away on March 7, 2006.  (AR 779).  Now, Featherston claims she is entitled to compensation and benefits under EEOICPA Parts B and E.  (Compl. ¶ 15).

1

Featherston filed the claims at issue in this lawsuit with DOL's Office of Workers' Compensation Programs ("OWCP") on October 6, 2010. By letters dated April 15, 2011, and September 23, 2011, the district office of OWCP informed Featherston of the medical evidence it had received and of the medical evidence it still needed—in particular, the evidence needed to establish her claim for CBD under Part B. (AR 499-501, 413-415).

The medical evidence submitted by Featherston in support of her October 6, 2010, claim included:

1) PGDP dispensary records from the period 1955 to 1979 documenting the treatment and/or diagnoses of pneumonia (AR 554), acute respiratory disease (AR 547), acute sinusitis (AR 520), hiatal hernia (AR 381), allergic rhinitis (AR 522) and chemical burns on the bridge of nose and neck. (AR 555, 593).

2) Attending physician statements indicating treatment for viral pneumonia, acute sinusitis, and acute bronchitis. (AR 379, 458, 459, 460).

3) A January 10, 1979, medical consultation report listing an impression of "chemical rhinitis secondary to the inhalation of chemical vapors." (AR 514-515).

4) X-ray reports dated May 14, 1981, noting "lungs are normally expanded and aerated and there is no evidence of active parenchymal disease in either lung," and dated May 3, 1982, noting "lungs are mildly hyper-aerated suggesting possible pulmonary emphysema, but this should be correlated with the clinical laboratory findings." (AR 589).

5) An October 2, 1985, initial consult medical report noting history of hiatal hernia, sinus infections, and bronchitis, and that "patient was previously in the military service, Army [and] had bilateral pneumonia." (AR 546).

6) An October 12, 1994, chest x-ray report noting "no active disease in the lung fields. Scattered granulomas noted." (AR 461).

7) A December 12, 1995, chest x-ray report noting "bilateral basilar discoid atelectasis." (AR 462).

8) A September 17, 1999, report of Dr. Steven Markowitz, summarizing the results of a Former Worker Health Protection Program medical screening examination, including a breathing test that was reportedly abnormal, showing a mild decrease in air volume of the lungs, but normal airflow. "We note you have been experiencing phlegm production for the past 50 years. This symptom is consistent with chronic bronchitis." (AR 348-50).

9) A July 9, 2004, chest portable x-ray noting "[m]inimal right basilar atelectasis." (AR 962).

10) A July 15, 2004, chest x-ray report noting "[h]ypoaeration of the lungs with central vascular crowding. Right paratracheal mass-like density is stable." (AR 591).

11) Paducah medical chart notes written by Dr. Charles F. Winkler on June 14, 2000 ("no persistent cough") (AR 816-18); on July 25, 2005 ("[h]e does have dyspnea on exertion and no chronic cough") (AR 823-24); and on October 24, 2005 ("[h]e denies cough"). (AR 825-27).

After receiving this information, the district office referred Featherston's claim file to a medical consultant and asked the consultant to provide a medical opinion on whether the medical records supported a diagnosis of chronic lung disease, the first date of any such diagnosis, and whether it was "at least as likely as not" that exposure to toxic substances at PGDP was a significant factor in aggravating, contributing to, or causing the diagnosed lung disease and subsequent death of Mr. Featherston. (AR 325-31). Ultimately, the consultant concluded that

the medical records did not include any diagnosis of chronic respiratory disease and that it was "not as likely as not" that exposure to a toxic substance at a Department of Energy facility was a significant factor in aggravating, contributing to, or causing the condition that caused Mr. Featherston's death. (AR 322-23).

On June 11, 2013, the Final Adjudication Branch ("FAB") within OWCP issued a final decision denying Featherston's claim for survivor benefits under Part B and E. (AR 80-92). On July 9, 2013, Featherston requested reconsideration of FAB's decision, which FAB denied on August 15, 2013, on the ground that no new evidence or argument had been submitted that directly contradicted its previous conclusions. (AR 35-38, 42-78). By letter dated April 4, 2014, Featherston's authorized representative requested the reopening of Featherston's claim under Parts B and E, attaching a single page extract from DOL's Site Exposure Matrices. (AR 18-20). On May 1, 2014, the District Director denied the request, finding no new or compelling evidence material to the outcome of the claim had been submitted. (AR 1-5).

## II.  JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1331 because a federal question under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, is presented.

## III.  DISCUSSION

Featherston seeks review of the FAB's denial of her Part B and E claims under the EEOICPA and the District Director's denial of her request to reopen them. (Pl.'s Br., DN 27).

### A.  Part B Claims

#### 1.  *Standard of Review*

Part B of the EEOICPA does not contain any provision either allowing for or precluding judicial review; therefore, this Court has federal question jurisdiction to review DOL's final

decisions to deny claims for benefits under Part B of the EEOICPA pursuant to 28 U.S.C. § 1331. *See Califano v. Sanders*, 430 U.S. 99, 105 (1977). Because the EEOICPA is silent on the procedures used in adjudicating claims for compensation, courts have employed the APA's "arbitrary or capricious" standard when reviewing DOL's final decisions denying claims for compensation under Part B. *See Yatsko v. U.S. Dep't of Labor*, 439 F. App'x 122, 124 (3d Cir. 2011); *Hayward v. U.S. Dep't of Labor*, 536 F.3d 376, 379-80 (5th Cir. 2008). Under the APA's arbitrary or capricious standard, a reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Ky. Waterways All. v. Johnson*, 540 F.3d 466, 473 (6th Cir. 2008) (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)).

"The arbitrary and capricious standard is the most deferential standard of judicial review of agency action, upholding those outcomes supported by a reasoned explanation, based upon the evidence in the record as a whole." *Mich. Bell Tel. Co. v. MCIMetro Access Transmission Servs., Inc.*, 323 F.3d 348, 354 (6th Cir. 2003) (citation omitted). Those contesting an agency's decision must "show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations." *McDonald Welding & Mach. Co. v. Webb*, 829 F.2d 593, 595 (6th Cir. 1987) (citations omitted). "If there is any evidence to support the agency's decision, the decision is not arbitrary or capricious." *Whaley v. U.S. Dep't of Labor*, No. 3:07-CV-212, 2008 WL 2446680, at *3 (E.D. Tenn. June 17, 2008) (quoting *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 475 (6th Cir. 2004)). Moreover, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Perry v. United Food &*

*Commercial Workers Dist. Unions 405 & 442*, 64 F.3d 238, 242 (6th Cir. 1995) (internal quotation marks omitted) (citations omitted).

### 2. *DOL's Decision was neither Arbitrary nor Capricious*

Review of FAB's final decision denying Featherston's claim under Part B shows that it considered the factors relevant to determining whether Featherston established a claim for CBD under Part B and evidences no clear error or violation of the EEOICPA or its implementing regulations. To establish a diagnosis of CBD resulting from the employee's work-related beryllium exposure, certain statutory criteria must be met depending upon whether the claimed diagnosis was prior to, or on and after, January 1, 1993:

> (A) For diagnoses on or after January 1, 1993, beryllium sensitivity (as established [by abnormal lymphocyte proliferation test performed on either blood or lung lavage cells]) together with lung pathology consistent with [CBD], including—
> (i) a lung biopsy showing granulomas or a lymphocytic process consistent with [CBD]
> (ii) a computerized axial tomography scan showing changes consistent with [CBD]; or
> (iii) pulmonary function or exercise testing showing pulmonary deficits consistent with [CBD].
>
> (B) For diagnoses before January 1, 1993, the presence of—
> (i) occupational or environmental history, or epidemiologic evidence of beryllium exposure; and
> (ii) any three of the following criteria:
> (I) Characteristic chest radiographic (or computed tomography (CT)) abnormalities.
> (II) Restrictive or obstructive lung physiology testing or diffusing lung capacity defect.
> (III) Lung pathology consistent with [CBD].
> (IV) Clinical course consistent with a chronic respiratory disorder.
> (V) Immunologic tests showing beryllium sensitivity (skin patch test or beryllium blood test preferred).

42 U.S.C. § 7384l(13).

Because no abnormal beryllium lymphocyte proliferation test was submitted, FAB could not apply the criteria under Section 73841(13)(A) for establishing a post-1993 diagnosis of CBD. Accordingly, FAB limited its analysis to determining whether the criteria under Section 73841(13)(B) could be used. In its analysis, FAB followed agency procedures, which provide that the pre-1993 criteria are used only if the medical evidence establishes that the earliest date the employee received treatment for or was tested or diagnosed with chronic respiratory disorder was before January 1, 1993. (AR 90); *see* Federal (EEOICPA) Procedure Manual, Chapter 2-1000.6 (April 2013).[1] Based on a totality of the medical evidence, including the opinion of the medical consultant the district office retained, FAB found that the pre-1993 criteria could not be used in Featherston's case because there was no medical evidence submitted of testing, diagnosis, or treatment for a chronic respiratory disorder. Specifically, FAB observed that:

> The chest x-ray dated May 3, 1982, stated the lungs are mildly hyperaerated suggesting possibly pulmonary emphysema. However, there is no documented evidence that supports further medical assessment or treatment relative to these findings.
>
> The [pulmonary function test ("PFT")], dated July 14, 1999, shows mild restriction. But in and of itself, the PFT does not establish a history of a chronic respiratory disorder. The [medical consultant] stated that while the employee had episodes of acute respiratory problems [such] as viral pneumonia, acute sinusitis, [and] some minimal atelectasis[,] he did not have a chronic respiratory disorder. He further stated that imaging tests alone do not equate to a disease. He stated that he [saw] no medically confirmed diagnosis of chronic bronchitis and the PFT's did not confirm [chronic obstructive pulmonary disorder].

(AR 90-91).

Featherston argues that DOL cannot use medical consultants in aid of rendering its decisions. DOL's procedure manual, however, does not contain any such restrictions on the

---

[1] The version of the procedures that was in effect at the time of FAB's June 11, 2013 final decision is available at:
https://www.dol.gov/owcp/energy/regs/compliance/PolicyandProcedures/proceduremanualhtml/unifiedpm/Unifiedpm_transmittals/Transmittal_13-04.pdf

7

referral of claims for CBD to medical consultants. Instead, it provides that referrals to medical consultants may be made "when the medical reports and/or tests do not include a clear interpretation and/or if there is a specific question(s) about the medical evidence." Federal (EEOCPA) Procedural Manual, Chapter 2-1000.8(b) (April 2013). In turn, it was appropriate for the district office to ask a medical consultant whether the medical evidence established that Mr. Featherston was treated for, tested for, or diagnosed with a chronic respiratory disorder before January 1, 1993.

Overall, in light of its review of the medical evidence and the opinion of a medical consultant, FAB made a reasoned decision in declining to apply the pre-1993 standards and denying Featherston's claim under Part B. Its decision was not arbitrary and capricious. *See Whaley*, 2008 WL 2446680, at *3; *Perry*, 64 F.3d at 242. FAB properly denied Featherston's claim.

B.  **Part E Claims**

A claimant dissatisfied with FAB's final decision on a claim may request reconsideration within 30 days of its issuance. 20 C.F.R. § 30.319(a). If the request for reconsideration is denied, the FAB decision that formed the basis for the request will be considered "final" on the date the request is denied. *Id.* § 30.319(c)(2). EEOICPA contains a provision allowing for judicial review of final decisions under Part E as follows:

> A person adversely affected by a final decision of the Secretary under [Part E] may review that order in the United States district court. . .by filing in such court within 60 days after the date on which that final decision was issued a written petition praying that such decision be modified or set aside. . . . Upon such filing, the court shall have jurisdiction over the proceeding and shall have the power to affirm, modify, or set aside, in whole or in part, such decision . . . .

42 U.S.C. § 7385s-6(a).

8

This Court has previously ruled that compliance with the 60-day filing deadline under Section 7385s-6(a) is a jurisdictional prerequisite for judicial review of DOL's final decisions denying claims under Part E. *See Lanier v. Dept. of Labor*, No. 5:14-CV-228-DNS-LLK, 2015 WL 1638495, at *2-3 (W.D. Ky. June 8, 2015).

FAB denied Featherston's Part E claim on June 11, 2013. The decision became final on August 15, 2013, when it denied her reconsideration request. 20 C.F.R. § 30.319(c)(2). Because Featherston did not seek judicial review until June 30, 2014, this Court lacks jurisdiction to review the portion of FAB's decision denying her Part E claim.

C. **Request to Reopen**

Requests to reopen EEOICPA claims are reviewable under certain circumstances. Recently, in *Berry v. Department of Labor*, the Sixth Circuit held that requests to reopen EEOICPA Part B claims based on new evidence are subject to judicial review under the APA. *Berry v. Dep't of Labor*, No. 15-6316, 2016 WL 4245459, at *5-6 (6th Cir. Aug. 11, 2016). Requests to reopen based solely on material error in the original decision, however, are unreviewable. *Id.*

Featherston challenges DOL's denial of her request to reopen her CBD claim under Part B and E. The Court is thus tasked with determining whether Featherston's reopening request was based on new evidence or a material error in the original decision.[2] Featherston argues that FAB arbitrarily and capriciously denied her request to reopen her case because it "[i]ntentionally and with malice removed 'Welding Fumes' from the PGDP Site Exposure Matrices," ignored that Featherston provided sufficient employment verifications, and failed to recognize that

---

[2] The Court recognizes that the Sixth Circuit's holding in *Berry* is limited to requests to reopen EEOICPA Part B claims. In light of the *Berry* court's reasoning, however, requests to reopen EEOCIPA Part E claims should be considered reviewable as well because the same regulations govern.

9

Featherston established that her husband was exposed to toxic chemicals PGDP that caused illness and, ultimately, death. (Compl. ¶¶ 7, 18).

Featherston failed to submit any new evidence with her request to reopen. In conjunction with her request, Featherston attached a single page extract from DOL's Site Exposure Matrices, which merely identifies toxic substances related to CBD, with no explanation as to how this extract applied to her claims. The DOL previously found that Featherston worked at PGPD and acknowledged that beryllium was known to have been present there, which raises a presumption of exposure. (AR 9, 89); 42 U.S.C. § 7384n. As a result, Mr. Featherston's employment verification and his exposure to beryllium at PGDP were not factors in the denial of Featherston's claims and are not new evidence.[3]

Featherston's claims were denied because the medical evidence in the record failed to establish that her husband was diagnosed with CBD as defined under the EEOCIPA. Featherston submitted no new medical or employment evidence in support of her request to reopen. *See* AR 8-15). Therefore, the Court concludes that Featherston's request was based on a purported material error in DOL's original decision. Under *Berry*, such reopening requests are not reviewable. *Berry*, 2016 WL 4245459, at *6.

## IV. CONCLUSION

First, as to her Part B claim, Featherston failed to establish the statutory criteria for a diagnosis of CBD. FAB's decision so concluding was logical and based on record evidence and was therefore not arbitrary or capricious. Second, the Court lacks jurisdiction to review the denial of Featherston's Part E claim. Last, the denial of Featherston's request to reopen her

---

[3] Featherston does not explain how failing to list welding fumes on the PGDP Site Exposure Matrix changes the analysis. In fact, the Site Exposure Matrix she attached to her request to reopen lists welding fumes. (AR 20).

claims is unreviewable under *Berry v. Department of Labor*, No. 15-6316, 2016 WL 4245459, at *5-6 (6th Cir. Aug. 11, 2016).  Therefore, this case must be **DISMISSED**.

**Greg N. Stivers, Judge**
**United States District Court**
September 12, 2016

cc: counsel of record